**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

January 7, 2022

**VIA CM/ECF**

Honorable Sarah L. Cave
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      **RE:**    *Reyes v. 24 West Food Corp., et al.*
              <u>Civil Action No. 18 Civ. 10878 (GBD)(SLC)</u>

Dear Judge Cave:

      This office represents named plaintiff Santiago Reyes (the "Plaintiff"). We write, jointly with counsel for 24 West Food Corp. d/b/a Food Dynasty Supermarket (the "Corporate Defendant"), Abdel K. Abuzahrieh, Mohammed Abuzahrieh and Hikmat Abuzahrieh (the "Individuals Defendants" and, collectively with the Corporate Defendant, the "Defendants" or "Food Dynasty"), pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's Dec. 31, 2021 Order (Dkt. No. 50). Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.**    **Procedural History and Plaintiff's Allegations**

      Plaintiff Reyes commenced this action by filing the Class & Collective Action Complaint in the Southern District of New York ("SDNY") on November 20, 2018. (Dkt. No. 1). Defendants filed an Answer on January 2, 2019 denying all material allegations. (Dkt. No. 16). Shortly thereafter, the Court referred this matter to mediation. (Dkt. No. 18).

      The Parties scheduled a mediation for February 12, 2019 before Evan J. Spelfogel, Esq. (Dkt. Entry dated Jan. 29, 2019). In anticipation of the mediation, Plaintiff exchanged initial disclosures, a non-confidential mediation statements, and a damages analysis and issued discovery requests. (Pelton Aff. ¶ 6). Shortly before the scheduled mediation, this office received via email from Defendants a one-page "Receipt for Payment of Back Wages" arising from a United States Department of Labor ("US DOL") investigation of the Corporate Defendant (the "2019 Investigation"), signed by Plaintiff and dated February 8, 2019. (*Id.*) On February 12, 2019, the Parties participated in a mediation before Evan J. Spelfogel, Esq., which was unsuccessful. (Pelton Aff. ¶ 7).

Hon. Sarah L. Cave
FLSA Settlement Fairness Letter
Page **2** of **7**

An initial conference was held on March 7, 2019 (Minute Entry dated Mar. 7, 2019) and a subsequent conference held July 11, 2019. (Minute Entry dated July 11, 2019). After Plaintiff filed a joint proposed pre-trial order on October 3, 2019 (Dkt. No. 21), the Court held a final pretrial conference on November 7, 2019. (Dkt. Entry Nov. 7, 2019).

On November 11, 2019, Defendants provided discovery responses, consisting primarily of the "Receipt for Payment of Back Wages," copies of a check reflecting the amount set forth on the Receipt for Payment, and a "Summary of Unpaid Wages" dated May 19, 2017 relating to another US DOL investigation of the Corporate Defendant (the "2017 Investigation") that appeared to set forth amounts due to several employees of Defendants, including Plaintiff. (Pelton Aff. ¶ 9).

On December 9, 2019, Defendants moved for summary judgment primarily on the basis of the documents set forth above relating to the 2017 DOL Investigation and the 2019 DOL Investigation. (Dkt. No. 22). Plaintiff opposed (Dkt. Nos. 25, 26), and the motion was fully briefed as of February 14, 2020. (Dkt. No. 28).

On July 2, 2020, Your Honor issued a Report and Recommendation granting in part and denying in part Defendants' motion for summary judgment, specifically granting dismissal of Plaintiff's FLSA claims for the period between September 18, 2016 through August 13, 2018 and denying dismissal for Plaintiff's FLSA and NYLL claims for the period between July 4, 2016 through September 17, 2016 and NYLL claims for the period between September 18, 2016 and August 11, 2018 and August 13, 2018. (Dkt. No. 32). On September 1, 2020, the Court adopted the Report and Recommendation in its entirety. (Dkt. No. 33).

On June 22, 2021, following Plaintiff's unsuccessful attempts to negotiate settlement with Defendants, Plaintiff requested a status conference before the Court. ((Pelton Aff. ¶ 12; Dkt. No. 34). A settlement conference before Your Honor was scheduled for July 21, 2021. (Dkt. No. 37). Subsequently, Plaintiff requested adjournment of the settlement conference due to this office's inability to contact Plaintiff Reyes. (Dkt. No. 38). On September 10, 2021, Plaintiff informed the Court that this office had contacted Plaintiff Reyes (Dkt. No. 42), and a settlement conference was thereafter scheduled for October 15, 2021. (Dkt. No. 45).

In accordance with the September 20, 2021 Order of the Court, the Parties exchanged settlement statements, and Plaintiff provided a revised individual damages analysis. (Pelton Aff. ¶ 14). The Parties attended the conference before Your Honor but were unable to resolve the matter. (Minute Entry dated Oct. 15, 2021).

The Court scheduled a final pretrial conference for December 15, 2021. (Dkt. No. 49). Prior to the date, in or around November 2021, the Parties reached a resolution in principle. (Dkt. No. 49; Pelton Aff. 17). Subsequently, the Parties finalized and drafted the Settlement Agreement. (Pelton Aff. ¶ 17). As set forth in the Settlement Agreement, the Agreement, as well as the mediation proceedings, were translated into Spanish for Plaintiff by Belinda Herazo, whose Declaration detailing her translation work is attached as **Exhibit B**. (*Id.* ¶ 18).

Hon. Sarah L. Cave
FLSA Settlement Fairness Letter
Page **3** of **7**

## II. The Settlement Accounts for Litigation Risk

Plaintiff worked at Defendants' grocery store, located in the Bronx, New York, for a little over two (2) years. Plaintiff alleges that for most of his employment period he worked sixty (60) hours per week and that for a few weeks, from in or around late July through August 13, 2018, he worked forty-six (46) hours per week. Plaintiff alleges that in 2016 and 2017 he was paid a flat weekly rate and that, in 2018, he was a paid straight-time hourly rate, from which Defendants automatically deducted one (1) hour's pay per day even though he was typically unable to take a one (1) hour break. As a result of Defendants' wage and hour practices, Plaintiff alleges that he was paid an effective hourly rate that fell below the correct statutory minimum wage, did not receive overtime premiums, and did not receive spread of hours premiums. Plaintiff also alleges that Defendants failed to provide him with a wage notice or wage statements that fulfilled the requirements of the NYLL § 195.

As set forth in the Report and Recommendation (Dkt. No. 32) and Order Adopting the Report and Recommendation (Dkt. No. 33), and above, the Court dismissed Plaintiff's FLSA claims for much of his employment period and denied dismissal of Plaintiff's FLSA claims for a period of approximately two and one-half (2.5) months and of his NYLL claims.

In preparation for the October 2021 settlement conference, Plaintiff prepared a damages analysis, based primarily upon Plaintiff's recollection of his hours worked and wages paid, as Defendants at no point produced any records of hours worked or wages paid. (Pelton Aff. ¶ 14). In total, Plaintiff calculated unpaid wage damages of $7,873.14, consisting of $5,617.14 in minimum wage under the NYLL, $12,111.86 in overtime premiums under the FLSA and NYLL, less $11,026.14 accrued during the excluded FLSA period for a final amount of $1,085.71, and $1,170.29 in spread of hours premiums; $18,899.29 in liquidated damage, including all NYLL unpaid overtime during the excluded FLSA period, $10,000.00 in wage notice and wage statement statutory damages, and $939.60 in prejudgment interest for a total of $37,712.03. (*Id.*)

Although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, which is likely the next step in this litigation, there is also the possibility that he would receive lower damages based upon the expected testimony of the Individual Defendants that Plaintiff did not work for the entire employment period and worked fewer hours than alleged. Accordingly, and particularly as Plaintiff Reyes has received some backpay from the 2019 US DOL Investigation, Plaintiff prefers to settle now for an amount that he would be guaranteed to receive under the terms of the settlement.

The parties believe that the settlement amount (i.e., $6,250.00) is a fair recovery based on the risks associated with establishing Defendants' liability, the calculated damages, the payment already received by Plaintiff Reyes, as well as the risks associated with proceeding to trial. Here, Plaintiff's recovery represents over 79% of his remaining unpaid wage damages.

## III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $6,250.00 (the "Settlement Amount"). Of the Settlement Amount, $2,595.94 is payable to Plaintiff's counsel (consisting of $768.91 in expense reimbursements and $1,827.03 in attorneys' fees). The remaining $2,595.94 is payable directly to Plaintiff (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiff signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiff and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiff and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588

Hon. Sarah L. Cave
FLSA Settlement Fairness Letter
Page **5** of **7**

        (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

    The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

**IV.    Plaintiff's Attorney's Fees and Expenses**

    As set forth in the Affidavit of Brent E. Pelton, Esq., as of January 7, 2022, Plaintiff's counsel has spent more than 75 hours in prosecuting and settling this matter, resulting in a lodestar of $17,465.00. (*See* Pelton Aff. Ex. C.) Plaintiff's counsel has spent $768.91 in actual litigation costs. (*Id.* at Ex. D.) The portion of the settlement amount that Plaintiff seek as attorneys' fees (i.e., $1,827.30) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, and represents an extremely modest fraction of the lodestar amount and is consistent with what was agreed upon between the Plaintiff and his counsel in his retainer agreements.

    The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern and Southern Districts of New York. In fact, the same rates have been approved in connection with recent wage and hour default judgments in the Eastern and Southern Districts of New York. *See Guinea v. Garrido Food Corp*., No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *Campos v. BKUK 3 Corp*, No. 18-cv-4036, Dkt. No. 156 (Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates). Accordingly, Plaintiff's counsel submits that the attorney's fees component of the settlement is fair and reasonable.

**V.    The Parties Believe that the Settlement Is Fair and Reasonable**

    An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that

the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of several rounds of vigorous arm's-length negotiations and summary judgment briefing. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff and amounts already recovered due to Defendants' wage and hour practices. At this time, if settlement were unsuccessful, the Parties would proceed to trial, which would consume a tremendous amount of time and resources for modest maximum potential damages. Rather than move forward with a lengthy and costly trial, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*       *       *       *       *

As demonstrated above, the settlement is a result of extensive negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| PELTON GRAHAM LLC | SIEGEL & SIEGEL, P.C. |
|---|---|
| By: */s Brent E. Pelton* | By: */s Michael D. Siegel* |
| Brent E. Pelton (BP 1055) | Michael D. Siegel |
| pelton@peltongraham.com | sieglaw@optonline.net |
| Taylor B. Graham (TG 9607) | One Penn Plaza, Suite 2414 |
| graham@peltongraham.com | New York, New York 10119 |

www.PeltonGraham.com

111 Broadway, Suite 1503  Tel: (212) 721-5300
New York, New York 10006  Fax: (212) 947-9967
Telephone: (212) 385-9700
Facsimile: (212) 385-0800  *Attorney for Defendants*

*Attorneys for Plaintiff*

www.PeltonGraham.com